**BRENDA J. ERDOES**, Legislative Counsel
Nevada Bar No. 3644
**KEVIN C. POWERS**, Senior Principal Deputy Legislative Counsel
Nevada Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson Street
Carson City, Nevada 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
kpowers@lcb.state.nv.us
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DR. ANNETTE TEIJEIRO, an individual; ERNEST FITZPATRICK, an individual; MARIO ROCHA, an individual; MARTHA KIMPEL, an individual; MAUREEN KARAS, an individual; and JENNIFER WILLIAMS, an individual,<br><br>       Plaintiffs,<br><br>      vs.<br><br>MICHAEL SCHNEIDER, in his capacity as President Pro Tempore of the Nevada Senate; JOHN OCEGUERA, in his official capacity as Speaker of the Nevada Assembly; and DEBBIE SMITH, in her official capacity as Speaker Pro Tempore of the Nevada Assembly,<br><br>       Defendants. | **Case No. 3:11-cv-00330-LRH-WGC** |

**DEFENDANTS'**
**MOTION TO DISMISS**

## MOTION

Defendants, Nevada State Senator Michael Schneider, in his official capacity as President Pro Tempore of the Nevada Senate, Nevada State Assemblyman John Oceguera, in his official capacity as Speaker of the Nevada Assembly, and Nevada State Assemblywoman Debbie Smith, in her official capacity as Speaker Pro Tempore of the Nevada Assembly (collectively Legislator-Defendants), by and through their counsel, hereby move the Court for an order granting their motion to dismiss and dismissing the Plaintiffs' claims against the Legislator-Defendants with prejudice under FRCP 12(b)(1) and FRCP 12(b)(6). This motion to dismiss is made and based upon the following Memorandum of Points and Authorities and upon all pleadings, documents and exhibits on file in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **Statement of the Facts and the Case.**

On May 9, 2011, the Plaintiffs, who are registered voters in Nevada, filed a complaint for declaratory and injunctive relief challenging the legality of Nevada's voting districts under the United States Constitution and the Voting Rights Act of 1965, 42 U.S.C. §§ 1973 et seq. The Plaintiffs allege that application of Nevada's existing voting districts in the elections to be held in 2012 will cause dilution of their votes and will also dilute the voting rights of Hispanic communities in violation of the United States Constitution and the Voting Rights Act. (Compl. ¶¶ 23-30.) The Plaintiffs' allegations are based on the fact that Nevada's Legislature and Governor have not enacted into law voting districts using population data from the 2010 federal census. (Compl. ¶¶ 1-25.) The only Defendants named in the Plaintiffs' complaint are the three Legislator-Defendants who are being sued in their official capacities as the President Pro Tempore of the Nevada Senate, the Speaker of the Nevada Assembly and the Speaker Pro Tempore of the Nevada Assembly.

1    On May 18, 2011, this Court entered an order staying the case pending completion of the 76th

2  Regular Session and any related special sessions of the Legislature because the Legislature was

3  considering legislation for the redistricting of Nevada's voting districts. The Court's order provided that

4  the stay may be lifted upon formal request by any party within the 30-day period following the final

5  session. During the 76th Regular Session, the Legislature did not enact any redistricting legislation, and

6  since the completion of the 76th Regular Session, Nevada's Governor has not called a special session to

7  consider redistricting legislation. The Legislator-Defendants have filed a motion to lift the stay

8  concurrently with their motion to dismiss.

9    In their motion to dismiss, the Legislator-Defendants are asking the Court to dismiss the Plaintiffs'

10  claims against the Legislator-Defendants with prejudice under FRCP 12(b)(1) for lack of subject-matter

11  jurisdiction because the Plaintiffs have not sued the proper party-defendant to pursue their claims in

12  federal court and, therefore, the Plaintiffs do not have Article III standing. In particular, given that

13  Nevada's Secretary of State is the public officer charged with the statutory power and duty to administer

14  and enforce Nevada's election laws and to conduct its elections, any relief against the individual

15  Legislator-Defendants would be ineffectual and meaningless because the individual Legislator-

16  Defendants have no authority or role under state law in administering or enforcing Nevada's election

17  laws or in conducting its elections. In the absence of a proper party-defendant, the Plaintiffs cannot

18  satisfy the redressability prong of Article III standing because the individual Legislator-Defendants

19  cannot provide the Plaintiffs with the relief they requested in their complaint.

20    The Legislator-Defendants are also asking the Court to dismiss the Plaintiffs' claims against the

21  Legislator-Defendants with prejudice under FRCP 12(b)(6) for failure to state a claim upon which relief

22  can be granted. In particular, the Plaintiffs have failed to state a claim upon which relief can be granted

23  because their claims against the individual Legislator-Defendants are barred in federal court as a matter

24

of law by the following absolute immunities: (1) Nevada's sovereign immunity under the Eleventh Amendment; and (2) federal common-law legislative immunity.

**II.   Argument.**

**A. The Plaintiffs' claims against the Legislator-Defendants must be dismissed with prejudice under FRCP 12(b)(1) for lack of subject-matter jurisdiction.**

In a challenge to the Court's subject-matter jurisdiction, the Plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction over their claims. Chandler v. State Farm Mut. Auto Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) ("The party asserting federal subject matter jurisdiction bears the burden of proving its existence."). In this case, the Plaintiffs cannot prove that the Court has subject-matter jurisdiction over their claims because the Plaintiffs have not sued the proper party-defendant to pursue their claims in federal court. In the absence of a proper party-defendant, the Plaintiffs do not have Article III standing, and their claims against the Legislator-Defendants must be dismissed with prejudice under FRCP 12(b)(1) for lack of subject-matter jurisdiction.

Article III standing is a species of subject-matter jurisdiction, Carijano v. Occidental Petrol. Corp., 643 F.3d 1216, 1227 (9th Cir. 2011), and "[a] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). Because Article III standing pertains to a federal court's subject-matter jurisdiction, it is properly raised in a motion to dismiss under FRCP 12(b)(1). Id.

For a plaintiff to have Article III standing, the plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Hein v. Freedom from Religion Found., 551 U.S. 587, 598 (2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Furthermore, Article III standing requires the plaintiff to establish that the

1    defendant is the proper party who can provide the requested relief. <u>Simon v. E. Ky. Welfare Rights Org.</u>,

2    426 U.S. 26, 41-42 (1976) ("Art. III still requires that a federal court act only to redress injury that fairly

3    can be traced to the challenged action of the defendant, and not injury that results from the independent

4    action of some third party not before the court."); <u>Okpalobi v. Foster</u>, 244 F.3d 405, 426 (5th Cir. 2001)

5    (en banc) ("a plaintiff may not sue a state official who is without any power to enforce the complained-

6    of statute."). If the defendant is not the proper party who can provide the requested relief, Article III

7    standing is lacking because the plaintiff's alleged injury would not be traceable to the defendant or

8    redressable by the court. <u>Simon</u>, 426 U.S. at 41-42; <u>Okpalobi</u>, 244 F.3d at 426-29.

9        In cases where the constitutionality of a statute or rule is at issue, it is well established that "[a]

10   person aggrieved by the application of a legal rule does not sue the rule *maker*—Congress, the President,

11   the United States, a state, a state's legislature, the judge who announced the principle of common law."

12   <u>Quinones v. City of Evanston</u>, 58 F.3d 275, 277 (7th Cir. 1995) (emphasis in original). Instead, the

13   aggrieved person must sue the public officer charged with enforcing the statute or rule whose actions or

14   threatened actions may cause the aggrieved person harm. <u>See</u> <u>Fitts v. McGhee</u>, 172 U.S. 516, 529-30

15   (1899); <u>Long v. Van de Kamp</u>, 961 F.2d 151, 152 (9th Cir. 1992); <u>S. Pac. Transp. Co. v. Brown</u>, 651

16   F.2d 613, 615 (9th Cir. 1980).

17       For example, in a redistricting case, the plaintiff must sue the public officer or body charged with

18   enforcing the state's election laws and conducting its elections. <u>See, e.g.</u> <u>Scott v. Taylor</u>, 405 F.3d 1251,

19   1256 (11th Cir. 2005); <u>Hellebust v. Brownback</u>, 42 F.3d 1331, 1335 (10th Cir. 1994); <u>Dickinson v. Ind.</u>

20   <u>State Election Bd.</u>, 933 F.2d 497, 499-502 (7th Cir. 1991). The plaintiff in a redistricting case does not

21   have standing to sue state legislators regarding an allegedly unconstitutional voting district because "the

22   legislator defendants have no role in the enforcement or implementation of the voting district." <u>Scott</u>,

23

24

405 F.3d at 1256. As noted by the Eleventh Circuit Court of Appeals in a redistricting case brought against state legislators:

> One peculiarity of this case is the fact that Scott seeks no actual relief against these state legislator defendants. The relief Scott seeks pertains to the enforcement and implementation of the challenged voting district; the undisputed fact is that these legislator defendants have absolutely no role to play in that regard. Thus, it is extremely doubtful that Scott could satisfy the third prong of the standing requirements—a substantial likelihood that her injury could be redressed by a favorable decision against these legislator defendants.

Id. at 1256-57 n.8; see also id. at 1259 (Jordan, J., concurring).

In their complaint, the Plaintiffs allege that application of Nevada's existing voting districts in the elections to be held in 2012 will cause dilution of their votes and will also dilute the voting rights of Hispanic communities in violation of the United States Constitution and the Voting Rights Act. (Compl. ¶¶ 23-30.) As a remedy, the Plaintiffs ask the Court to enjoin the individual Legislator-Defendants from "using the Voting Districts in any future primary or general election(s)." (Compl. at 6.) However, because the individual Legislator-Defendants are not charged by state law with administering or enforcing Nevada's election laws, they do not have any power or authority to use or not use Nevada's existing voting districts in future elections. They simply have no role under state law in administering or enforcing Nevada's election laws or conducting its elections. The statutory power and duty to administer and enforce Nevada's election laws and to conduct its elections belongs to Nevada's Secretary of State.

Under Nevada Revised Statutes (NRS), Nevada's Secretary of State serves as the Chief Officer of Elections for the State and "is responsible for the execution and enforcement of the provisions of title 24 of NRS and all other provisions of state and federal law relating to elections in this State." NRS 293.124(1). As part of his powers and duties regarding elections, "[t]he Secretary of State may provide interpretations and take other actions necessary for the effective administration of the statutes and regulations governing the conduct of primary, general, special and district elections in this State." NRS

-6-

293.247(4). When administering Nevada's election laws, the Secretary of State "must obtain and maintain consistency in the application, operation and interpretation of [those] election laws." Heller v. Legislature, 120 Nev. 456, 461 (2004). Based on the statutory authority that the Legislature has delegated to the Secretary of State, the Nevada Supreme Court has stated that "Nevada's Legislature, by designating the Secretary as the chief officer of elections, and by giving his office the authority to administer the state's election process, appears to have intended that the Secretary only have standing to seek enforcement of the state's election laws." Id.

     In contrast to the enforcement authority that the Legislature has given to the Secretary of State regarding Nevada's elections, the Legislature has not given any enforcement authority regarding Nevada's elections to the individual Legislator-Defendants, and they do not have any statutory powers or duties regarding the administration, application, operation and interpretation of Nevada's election laws. Given that the individual Legislator-Defendants have no role in administering and enforcing Nevada's election laws, an injunction running against the individual Legislator-Defendants which stops them from using Nevada's existing voting districts in future elections would be ineffectual and meaningless because "[t]he legislators in this case do not have enforcement authority and are not involved in conducting elections . . . Their role is limited to making law." Scott, 405 F.3d at 1259 (Jordan, J., concurring) (concluding that the plaintiff lacked Article III standing to bring a redistricting case against state legislators and that the doctrine of legislative immunity also barred the plaintiff's claims against state legislators); see also Hellebust, 42 F.3d at 1335 (holding that the state legislature is not a necessary party in a redistricting case); Dickinson, 933 F.2d at 500-02 (holding that the state legislature and individual state legislators are not necessary parties in a redistricting case); Marylanders for Fair Representation v. Schaefer, 144 F.R.D. 292, 301-02, 304-05 (D. Md. 1992) (granting a motion

to dismiss the President of the Maryland Senate and the Speaker of the Maryland House of Delegates from a redistricting case).

Consequently, because the Plaintiffs have not sued Nevada's Secretary of State in his official capacity as the public officer charged with the statutory power and duty to administer and enforce Nevada's election laws and to conduct its elections, the Plaintiffs have not sued the proper party-defendant to pursue their claims in federal court. Under Nevada's election laws, it is the Secretary of State who is responsible for applying Nevada's existing voting districts in future elections, and it would be the Secretary of State's application of those voting districts in future elections, and not any actions taken by the individual Legislator-Defendants, that would be the cause of the Plaintiffs' alleged injuries. Furthermore, because it is the Secretary of State, and not the individual Legislator-Defendants, who must be enjoined from using Nevada's existing voting districts in future elections, the Secretary of State is the only public officer who can provide the Plaintiffs with their requested relief. Therefore, the Secretary of State is the proper party-defendant, not the individual Legislator-Defendants.

Having failed to sue the proper party-defendant, the Plaintiffs cannot satisfy the redressability prong of Article III standing because their alleged injuries are not traceable to and cannot be redressed by the individual Legislator-Defendants. Without Article III standing, the Plaintiffs cannot pursue their claims in federal court, and their claims against the Legislator-Defendants must be dismissed with prejudice under FRCP 12(b)(1) for lack of subject-matter jurisdiction.

**B. The Plaintiffs' claims against the Legislator-Defendants must be dismissed with prejudice under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.**

Under FRCP 12(b)(6), the Court must dismiss the Plaintiffs' claims against the Legislator-Defendants if the Plaintiffs' complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its

-8-

face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the *defendant* is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (emphasis added). Under that standard, if it is apparent from the face of the Plaintiffs' complaint that an affirmative defense or other bar to relief, such as absolute immunity, protects the Legislator-Defendants from liability, the Court must dismiss the Plaintiffs' claims against the Legislator-Defendants with prejudice for failure to state a claim upon which relief can be granted. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 416-19 & n.13 (1976) ("An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."); <u>Mullis v. U.S. Bankr. Ct.</u>, 828 F.2d 1385, 1387 n.6 (9th Cir. 1987) ("The issue of entitlement to absolute . . . immunity for acts alleged in the complaint properly may be decided on a motion to dismiss.").

In this case, the Plaintiffs have failed to state a claim upon which relief can be granted because it is apparent from the face of the Plaintiffs' complaint that their claims against the Legislator-Defendants are barred in federal court as a matter of law by absolute immunity arising from the following sources: (1) Nevada's sovereign immunity under the Eleventh Amendment; and (2) federal common-law legislative immunity. Because of these absolute immunities, the Plaintiffs' claims against the Legislator-Defendants must be dismissed with prejudice under FRCP 12(b)(6).

**(1)  The Plaintiffs' claims against the Legislator-Defendants are barred in federal court as a matter of law by Nevada's sovereign immunity under the Eleventh Amendment.**

Sovereign immunity under the Eleventh Amendment is an affirmative defense that, if proven, requires dismissal of the complaint. <u>See</u> <u>Elwood v. Drescher</u>, 456 F.3d 943, 949 (9th Cir. 2006); <u>Miles v. California</u>, 320 F.3d 986, 988-89 (9th Cir. 2003). Generally speaking, sovereign immunity under the Eleventh Amendment bars actions in federal court against a State and its officers for most forms of

relief. <u>Va. Office for Prot. & Advocacy v. Stewart</u>, 131 S.Ct. 1632, 1637-38 (2011); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100-03 (1984).

However, under the exception to Eleventh Amendment immunity established by the Supreme Court in <u>Ex parte Young</u>, 209 U.S. 123, 155-56 (1908), the Eleventh Amendment does not bar actions in federal court against state officers in their official capacities if the actions seek only prospective declaratory or injunctive relief. <u>L.A. Branch NAACP v. L.A. Unified Sch. Dist.</u>, 714 F.2d 946, 952 (9th Cir. 1983). Yet, implicit in the right to sue a state officer in federal court for prospective declaratory or injunctive relief is the requirement that the state officer bear some connection to the enforcement of the challenged state law. <u>S. Pac. Transp. Co. v. Brown</u>, 651 F.2d 613, 615 (9th Cir. 1980) ("when a state officer is sued to enjoin enforcement of state law, he must have 'some connection' with enforcement or suit against him would be equivalent to suit against the state and would violate the Eleventh Amendment."); <u>Long v. Van de Kamp</u>, 961 F.2d 151, 152 (9th Cir. 1992). As explained by the Supreme Court in <u>Ex parte Young</u>:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, *it is plain that such officer must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

209 U.S. at 157 (emphasis added).

The connection necessary to trigger the <u>Ex parte Young</u> exception "must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law." <u>Snoeck v. Brussa</u>, 153 F.3d 984, 986 (9th Cir. 1998). The connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." <u>L.A. County Bar Ass'n v. Eu</u>, 979 F.2d 697, 704 (9th Cir. 1992). The Court's inquiry as to whether the

necessary connection exists to invoke the <u>Ex parte Young</u> exception is closely related to and overlaps with the Court's inquiry regarding causation and redressability for Article III standing. <u>Culinary Workers Union, Local 226 v. Del Papa</u>, 200 F.3d 614, 619 (9th Cir. 1999); <u>Artichoke Joe's v. Norton</u>, 216 F. Supp. 2d 1084, 1110 (E.D. Cal. 2002). As with Article III standing, to invoke the <u>Ex parte Young</u> exception, the plaintiff generally must sue the public officer charged with the power and duty to enforce the challenged state law. If the plaintiff sues a state officer who does not have any connection to the enforcement of the challenged state law, then the plaintiff's federal action for prospective declaratory or injunctive relief is barred by the Eleventh Amendment. <u>Confederated Tribes v. Locke</u>, 176 F.3d 467, 469-70 (9th Cir. 1999); <u>Snoeck</u>, 153 F.3d at 986-88.

As discussed previously with regard to Article III standing, the individual Legislator-Defendants have no authority or role under state law in administering or enforcing Nevada's election laws or in conducting its elections. Instead, the statutory power and duty to administer and enforce Nevada's election laws and to conduct its elections belongs to Nevada's Secretary of State. Because the individual Legislator-Defendants do not have the necessary connection to the enforcement of the election laws challenged by the Plaintiffs, they may not be sued in federal court under the <u>Ex parte Young</u> exception to Eleventh Amendment immunity. Therefore, because the Plaintiffs' claims are barred in federal court as a matter of law by Nevada's sovereign immunity under the Eleventh Amendment, the Plaintiffs have failed to state a claim upon which relief can be granted, and their claims against the Legislator-Defendants must be dismissed with prejudice under FRCP 12(b)(6).

**(2)  The Plaintiffs' claims against the Legislator-Defendants are barred in federal court as a matter of law by the federal common-law doctrine of legislative immunity.**

The federal common law provides state legislators with absolute legislative immunity in federal court for any civil claims arising from acts that fall within the scope of legitimate legislative activity.

1    Tenney v. Brandhove, 341 U.S. 367, 372-76 (1951); Lake Country Estates v. Tahoe Reg'l Planning

2    Agency, 440 U.S. 391, 403-06 (1979). Under this absolute legislative immunity, state legislators are

3    protected in federal court from having to defend themselves against civil claims challenging actions

4    taken by them in their official legislative capacities, regardless of whether those claims seek monetary

5    damages or prospective declaratory or injunctive relief. Supreme Ct. of Va. v. Consumers Union, 446

6    U.S. 719, 731-34 (1980); Cmty. House, Inc. v. City of Boise, 623 F.3d 945, 959 (9th Cir. 2010); Scott v.

7    Taylor, 405 F.3d 1251, 1253-56 (11th Cir. 2005).

8         Legislative immunity "will be read broadly to effectuate its purposes." United States v. Johnson,

9    383 U.S. 169, 180 (1966). The primary purpose of legislative immunity is to guarantee that "the

10   legislative function may be performed independently without fear of outside interference." Consumers

11   Union, 446 U.S. at 731. Legislative immunity protects legislators from having to defend themselves

12   against civil claims arising from acts that are "integral steps in the legislative process." Bogan v. Scott-

13   Harris, 523 U.S. 44, 55 (1998). The acts protected by legislative immunity include the introduction,

14   consideration and passage of legislation. Id.; Chappell v. Robbins, 73 F.3d 918, 920-21 (9th Cir. 1996).

15        Legislative immunity also prohibits an inquiry into the motives of legislators because it is "not

16   consonant with our scheme of government for a court to inquire into the motives of legislators." Tenney,

17   341 U.S. at 377. This is true regardless of whether there are allegations of improper motives because

18   "[t]he claim of an unworthy purpose does not destroy the privilege." Id.; Bogan, 523 U.S. at 54-55;

19   Scott, 405 F.3d at 1256 n.7; Chappell, 73 F.3d at 921.

20        Legislative immunity also provides testimonial and evidentiary privileges which protect legislators

21   from having to testify or disclose documents in civil proceedings when such acts would intrude upon,

22   interfere with or pry into the legislative process. Gravel v. United States, 408 U.S. 606, 616 (1972);

23   United States v. Rayburn House Office Bldg., 497 F.3d 654, 659-60 (D.C. Cir. 2007). Thus, it is well

24

-12-

1   established "that a key purpose of the privilege is to prevent intrusions in the legislative process and that

2   the legislative process is disrupted by the disclosure of legislative material, regardless of the use to

3   which the disclosed materials are put." Rayburn House Office Bldg., 497 F.3d at 660.

4          In several cases involving claims that voting districts violated the United States Constitution and

5   the Voting Rights Act, federal courts have held that legislators who timely raise the defense of

6   legislative immunity must be dismissed from the case. Scott v. Taylor, 405 F.3d 1251, 1253-56 (11th

7   Cir. 2005) (holding in a redistricting case that "these state legislator defendants enjoy legislative

8   immunity protecting them from a suit challenging their actions taken in their official legislative

9   capacities and seeking declaratory or injunctive relief."); accord Hispanos Unidos v. Virgin Islands, 314

10  F. Supp. 2d 501, 505 (D.V.I. 2004); Latino Pol. Action Comm. v. City of Boston, 581 F. Supp. 478,

11  481-84 (D. Mass. 1984); Connor v. Winter, 519 F. Supp. 1337, 1340 n.1 (S.D. Miss. 1981); Cohen v.

12  Maloney, 428 F. Supp. 1278, 1281 (D. Del. 1977).[1] As explained by the Eleventh Circuit Court of

13  Appeals in a redistricting case brought against state legislators:

14        Because [defendants] are state legislators who acted in their legislative capacities, they
          are entitled to absolute legislative immunity. This is true regardless of whether a suit seeks
15        damages or prospective relief and regardless of whether the state legislators are named in
          their individual or official capacity.

16

17  Scott, 405 F.3d at 1257.

18         In their complaint, the Plaintiffs have sued the individual Legislator-Defendants in their official

19  legislative capacities (Compl. ¶ 17) for prospective declaratory and injunctive relief (Compl. at 6). The

20  Plaintiffs allege that application of Nevada's existing voting districts in the elections to be held in 2012

21  _____

22  [1] See also Sablan v. Tenorio, 4 N. Mar. I. 351, 359-60 (N. Mar. I. 1996) (holding in a redistricting case
     that the Governor of the Commonwealth of the Northern Mariana Islands was afforded legislative
23   immunity because the Governor performed legislative functions in the redistricting process).

24

1    will cause dilution of their votes and will also dilute the voting rights of Hispanic communities in

2    violation of the United States Constitution and the Voting Rights Act. (Compl. ¶¶ 23-30.) The Plaintiffs'

3    allegations are based on the fact that Nevada's Legislature and Governor have not enacted into law

4    voting districts using population data from the 2010 federal census. (Compl. ¶¶ 1-25.)

5         Because the individual Legislator-Defendants do not have any connection to the enforcement of

6    the voting districts challenged by the Plaintiffs, it is apparent from the face of the Plaintiffs' complaint

7    that the individual Legislator-Defendants are being sued in their official legislative capacities as

8    lawmakers only, and that the Plaintiffs' claims are premised wholly on the fact that the individual

9    Legislator-Defendants are participants in the legislative process of enacting and revising Nevada's

10   voting districts. But under the federal common-law doctrine of absolute legislative immunity, the

11   Plaintiffs may not bring their claims against the individual Legislator-Defendants. As state legislators

12   participating in the legislative process, they are absolutely immune from civil claims for actions they

13   take in their official legislative capacities, regardless of whether those claims seek monetary damages or

14   prospective declaratory or injunctive relief. Therefore, because the Plaintiffs' claims against the

15   individual Legislator-Defendants are barred in federal court as a matter of law by the federal common-

16   law doctrine of absolute legislative immunity, the Plaintiffs have failed to state a claim upon which

17   relief can be granted, and their claims against the Legislator-Defendants must be dismissed with

18   prejudice under FRCP 12(b)(6).

19

20

21

22

23

24

1

## CONCLUSION

2

Based upon the foregoing, the Legislator-Defendants respectfully request that the Court enter an

3

order granting their motion to dismiss and dismissing the Plaintiffs' claims against the Legislator-

4

Defendants with prejudice under FRCP 12(b)(1) and FRCP 12(b)(6).

5

DATED:    This   **26th**   day of September, 2011.

6

Respectfully submitted,

7

**BRENDA J. ERDOES**
Legislative Counsel

8

By:    /s/  Kevin C. Powers

9

**KEVIN C. POWERS**
Senior Principal Deputy Legislative Counsel

10

Nevada Bar No. 6781
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION

11

401 S. Carson Street
Carson City, Nevada 89701

12

Tel: (775) 684-6830; Fax: (775) 684-6761
kpowers@lcb.state.nv.us

13

*Attorneys for Defendants*

14

15

16

17

18

19

20

21

22

23

24

1

## **CERTIFICATE OF SERVICE**

2   I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division,

3 and that on the  **26th**  day of September, 2011, I electronically filed the Legislator-Defendants'

4 Motion to Dismiss by using the Court's CM/ECF system. I further certify that all participants in the case

5 are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF

6 system upon all such participants, who are as follows:

7 Douglas R. Rands, Esq.
Rands, South & Gardner
8 9498 Double R Blvd. Ste. A
Reno, NV 89521
9 *Attorneys for Plaintiffs*

10

11

12  /s/  Kevin C. Powers
  An Employee of the Legislative Counsel Bureau

13

14

15

16

17

18

19

20

21

22

23

24